In re SMITH.

(District Court, N. D. California, First Division. November, 1913.)

No. 8,198.

BANKRUPTCY (§ 89*)—INVOLUNTARY PETITION—NATURE OF CLAIMS—LIQUIDATION BEFORE ANSWER.

Where claims of creditors signing an involuntary bankruptcy petition were based on the alleged bankrupt's statutory liability as a stockholder for debts of the corporation, and also supposed liability as a stockholder for debts of another corporation of which his corporation was a stockholder, all of which were unliquidated, and the claims of signing creditors constituting a primary liability did not amount to $500 in the aggregate, the alleged bankrupt was entitled to a liquidation of the claims, before answer.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 120–122; Dec. Dig. § 89.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy. In the matter of involuntary bankruptcy proceedings against F. M. Smith. Application by the bankrupt for liquidation of the claims of petitioning creditors before answer. Granted.

Green, Humphreys & Green, of San Francisco, Cal., for petitioners.

Morrison, Dunne & Brobeck and Mansfield & Newmark, all of San Francisco, Cal., for respondent.

Pillsbury, Madison & Sutro, of San Francisco, Cal., for certain creditors.

DOOLING, District Judge. On July 24, 1913, a petition was filed in this court by Leo R. Dickey, E. E. Gilman, Albert Hanford, and Union Land Company, alleging that the petitioners are creditors of F. M. Smith, having provable claims against him amounting to the sum of $500 in excess of the value of securities, alleging, further, that said F. M. Smith owes debts in excess of $1,000 and is insolvent, and alleging, also, the commission of certain acts of bankruptcy by said F. M. Smith within four months prior to the filing of the said petition. The character of the claims of said petitioners against the alleged bankrupt is also fully set out, in the said petition. Thereafter, and on August 21, 1913, J. M. Kane was allowed to intervene in said proceedings, and filed his petition as a creditor herein, and on the same date another petition was permitted to be filed by L. A. Goetz, Peter Hartwigsen, Frank Guittard, W. N. Hunt, R. B. Mott, John Lundholm, Edgar Mizner, and M. O'Connell, also intervening as creditors and joining in the original petition. In each of these petitions by intervening creditors the character of the claims against the alleged bankrupt is fully set forth.

These claims fall into four general classes. Claims of the first class, averred in the petitions to amount to $177,786.50, are based upon the following facts:

The claim of Dickey is typical of all the claims of this class. It is averred that the United Properties Company is a corporation, and that F. M. Smith is a stockholder therein; that on January 6, 1912, said corporation issued its bond certificate, wherein it agreed to deliver to the holder of such certificate, upon surrender thereof, 26 of its bonds, of the denomination of $1,000 each, and that said Dickey is the owner and holder of said certificate; that said corporation has failed and neglected to deliver the bonds as provided in the certificate; that by reason of such failure the said corporation became and is indebted to said Dickey in the sum of $26,000, and said F. M. Smith as a stockholder (the total number of shares issued being set out, and the number owned by Smith) became and is indebted to said Dickey in the sum of $10,979 as his proportionate liability for such debt of said corporation. There are five claims of this class, aggregating, as has been stated, $177,786.50.

The second class may be typified by the claim of Albert Hanford, which avers that the Union Water Company is a corporation with a capital stock of 500,000 shares, of which the United Properties Company owns 499,980 shares; that on February 15, 1912, the said the Union Water Company issued and delivered to said Hanford 15 bonds,

of the par value of $1,000, each, bearing interest at 6 per cent. per annum, payable semi-annually on the 1st days of January and July of each year; that the United Properties Company guaranteed in writing the payment of the principal and interest to accrue on said bonds; that on July 1, 1913, there became due to said Hanford for interest on said bonds the sum of $450; that by reason of said guaranty the United Properties Company became indebted to said Hanford in said sum of $450, and that the proportionate liability of said F. M. Smith as a stockholder of said the United Properties Company was and is the sum of $190—the whole number of shares issued being set out, as well as the number owned by said Smith. Of this class of claims there are seven, aggregating $429.64.

The third class embraces two claims, aggregating $4,909, and may be illustrated by taking one of them, the claim of C. E. Gilman, which sets out that the Union Water Company is a corporation with a capital stock of 500,000 shares, of which the United Properties Company owns 499,980 shares; that the Union Water Company owes said Gilman $1,615.19, evidenced by the promissory note of said Union Water Company payable upon demand; that as a stockholder of said Union Water Company the proportionate liability of the United Properties Company for said indebtedness is $1,614.93, and that as a stockholder of said the United Properties Company the proportionate liability of said F. M. Smith for said stockholder's liability of said the United Properties Company is $681—the total issue of the capital stock of said United Properties Company being set out, as also the number of shares thereof owned by said F. M. Smith.

The fourth class embraces a single claim, that of J. M. Kane, which is for the sum of $5,000 for money loaned by said Kane to said alleged bankrupt and secured by 50 shares of the capital stock of the International Mercantile & Bond Company and 50 shares of Realty Syndicate; the value of such securities being averred to be $1,000, leaving $4,000 unsecured.

There are therefore five claims, aggregating $177,786.50, based upon bond certificates, seven claims, aggregating $429.64, for guaranteed interest, two claims, aggregating $4,409, based upon the liability of a stockholder of a stockholder, and one claim, for $4,000, the excess of the claim for $5,000 over the value of the security.

All of the claims, except the last, are based upon the liability of said Smith as a stockholder of the United Properties Company, and two of them are based upon his liability as a stockholder of said corporation for an indebtedness of said corporation, due to its being a stockholder of the Union Water Company, which company borrowed the money. Upon this state of facts the alleged bankrupt has moved the court for an order directing the liquidation of all the said claims based upon his liability as a stockholder, and directing the determination of the value of the securities of said J. M. Kane, and this order is sought on the ground that the value of the securities held by said Kane is undetermined, and that the claims of all the others are unliquidated, and on the further ground that respondent is entitled, before further proceeding herein, to have determined the question as to whether or

not said petitions have been rightly filed by creditors of respondent having provable debts.

In support of this motion respondent has filed an affidavit setting forth that the value of the securities held by said Kane is greatly in excess of the amount of his claim; that there are extensive and valuable properties involved in this proceeding; that in the trial of the issues presented by said petitions much time will be consumed and enormous expense incurred, and that it will be for the best interest of all concerned to have determined preliminarily the question as to whether or not, upon liquidation of the said claims, it will be found that respondent is in fact indebted to said petitioners at all, or in such sum as would make their petitions valid, or, as stated by him, "rightly filed." The petitioners strongly object to such proceeding, on the ground, among others, that the court has no jurisdiction to make such order, at least in advance of the filing of an answer to the petitions, and that to countenance such procedure would be to introduce new and unheard-of pleadings and practice into the bankruptcy proceedings.

The relief sought by respondent does not seem to have been sought or granted heretofore in any bankruptcy court; but that fact alone is not sufficient to stamp it as unwarranted, and in a proper case it would seem to be authorized by the language of the Supreme Court of the United States in the case of Grant Shoe Co. v. Laird, 212 U. S. 445, 29 Sup. Ct. 332, 53 L. Ed. 591, the syllabus of which declares that:

"A liquidation may be ordered on the filing of the petition to ascertain whether the petition is based on a provable claim."

The body of the decision, speaking of what is meant by provable claims, supports the syllabus in the following terms:

"The whole argument from the letter of the statute depends on reading 'provable claims' in section 59b as meaning claims that may be proved then and there when the petition is filed. But if it can be seen then and there that the claims are of a kind that can be proved in the proceedings the words are satisfied; and, further, no reason appears why a liquidation may not be ordered on the filing of the petition to ascertain whether it is rightly filed or not."

It is not at all clear, under the first class of claims above mentioned, what the extent of the liability of respondent actually is. It does not follow that, because the bonds secured by the certificate were not delivered, the owner of the certificate has been damaged to the full extent of the face value of the bonds, nor, indeed, that he has been damaged at all. The claims of the second class are different, but they do not amount to $500 in the aggregate. The claims of the third class are based upon the supposed liability of a stockholder of a stockholder. That such a liability exists does not seem ever to have been judicially determined. Of course, if this were the only class of claims presented here, the question might be determined upon a demurrer to the petition. But a demurrer could not reach the question as to the amount due under claims of the first and fourth classes, and if it be determined that without these claims arising upon the liability of a stockholder of a stockholder there are still debts sufficient in number and amount to

support this proceeding, then the validity or invalidity of such claims becomes immaterial.

The amount due over and above the value of the securities of petitioner Kane must also be determined at some stage of the proceedings. It is quite true that all of these questions could be disposed of upon a trial of the issues after answer; but, in the language of the Supreme Court above quoted, no reason appears why a liquidation may not be ordered at this time to ascertain whether the petitions are rightly filed or not. On the contrary, the magnitude of the interests here involved, and the character of the liabilities upon which it is sought to have respondent adjudicated a bankrupt, strongly incline me to the belief that this preliminary question should be first disposed of. Many things have been suggested that are false quantities herein. If the petitioning creditors have claims sufficient in number and amount to support the proceedings against respondent, they are entitled to proceed, even though it be against the wish of a much larger number of creditors representing a vastly greater amount of indebtedness. The desires of other creditors of respondent may not be considered.

The only questions presented at this time are: (1) Have a sufficient number of creditors joined in the petition? (2) Do they hold claims against respondent to the amount required by the statute? (3) Should these matters be now determined in the manner suggested?

I am of the opinion that they should, and respondent's motion will therefore be granted.